**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

**GREGORY G. HARRIS,** as
Trustee of Kathleen A. Demas'
Bankruptcy Estate,

                      **Plaintiff,**              1:11-cv-1066
                                                      (GLS/CFH)

                          v.

**NEW YORK STATE
DEPARTMENT OF
CORRECTIONAL SERVICES et
al.,**

                      **Defendants.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Gleason, Dunn Law Firm | DANIEL A. JACOBS, ESQ. |
| 40 Beaver Street | |
| Albany, NY 12207 | |
| | |
| **FOR THE DEFENDANTS:** | |
| *New York State Department of Correctional Services and Brian Fischer* | |
| HON. ERIC T. SCHNEIDERMAN | COLLEEN D. GALLIGAN |
| New York State Attorney General | Assistant Attorney General |
| The Capitol | |
| Albany, NY 12224 | |
| | |
| *Michael Waite* | |
| Office of Robert M. Winn | ROBERT M. WINN, ESQ. |
| 13 North Street | |
| Granville, NY 12832 | |

**Gary L. Sharpe**

**Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Gregory G. Harris, as trustee of Kathleen A. Demas' bankruptcy estate, commenced this action against defendants New York State Department of Correctional Services (DOCCS)[1], Brian Fischer, in his official capacity as the DOCCS Commissioner, and Michael Waite, in his individual capacity, alleging gender-based claims of hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964[2] against DOCCS and Fischer (collectively, "DOCCS defendants"), and an aiding and abetting claim against Waite pursuant to the New York Human Rights Law[3]. (Am. Compl., Dkt. No. 13.) Pending before the court are motions for summary judgment filed by Waite, (Dkt. No. 45), and the DOCCS defendants, (Dkt. No. 47). For the reasons that follow, both

---

[1] The court is aware that, on April 1, 2011, New York State Department of Correctional Services and Parole merged together into one agency now entitled New York State Department of Corrections and Community Supervision ("DOCCS").

[2] *See* 42 U.S.C. §§ 2000e–2000e-17.

[3] *See* N.Y. Exec. Law §§ 290-301.

2

motions are granted.

## II. **Background**[4]

Demas was hired by DOCCS to serve as the Senior Librarian at Mount McGregor Correctional Facility in February 2004. (DOCCS Defs.' Statement of Material Facts (SMF) ¶ 2, Dkt. No. 47, Attach. 1.) At the time, Waite was a corrections officer assigned to oversee the security of the library at the facility. (*Id.* ¶ 3.) During her employment, Demas' immediate supervisor was Deputy Superintendent of Programs Paul Garcia. (*Id.* ¶ 12.)

Shortly after beginning as the librarian at Mount McGregor, Demas started having disagreements with Waite regarding the policies and operations of the library. (*Id.* ¶ 13.) For example, Demas and Waite had disputes over the use of a computer in the law library, (*id.* ¶ 14), rules regarding overdue books, (*id.* ¶ 16), the arrangement of furniture in the library, (*id.* ¶ 19), and the employment of inmates as clerks within the library, (*id.* ¶ 23).

In August 2005, Demas filed a complaint against Waite, in the form of a memorandum to Deputy Superintendent of Security Garrett Roberts,

---

[4] Unless otherwise noted, the facts are not in dispute.

alleging that Waite had threatened to get two male prison employees fired, and that Waite had been obtaining legal assistance from inmates. (*Id.* ¶¶ 26-27; Dkt. No. 45, Attach. 10.) An investigation occurred, and Waite was ultimately disciplined and suspended for four months. (DOCCS Defs.' SMF ¶¶ 28, 31.)

Following Waite's return from suspension, Demas began having additional incidents with other corrections officers as well, stemming from disagreements about policies on talking in the library, (*id.* ¶ 34), the removal of an out-of-date schedule from the library, (*id.* ¶ 35), the display of decorations, (*id.* ¶ 36), and the use of locks on the library bathroom doors, (*id.* ¶ 37). Numerous other minor incidents involving library operations occurred as well. (*Id.* ¶ 38.) Demas filed complaints with her superiors about many of these incidents. For example, Demas indicated to Garcia that she felt various corrections officers were "harassing [her] by trying to make it seem that [she is] not security minded." (Waite SMF ¶ 23, Dkt. No. 45, Attach. 2; Dkt. No. 45, Attach. 12 at 3.) Demas alleges that these incidents were occurring because she had testified against Waite in his disciplinary hearing, and the other corrections officers were acting in solidarity with Waite. (Am. Compl. ¶¶ 66, 78-79, 82.)

4

Ultimately, in April 2007, Demas' employment as a librarian at Mount McGregor was terminated, with the stated justification being various security concerns, including allegations that she had provided baked goods and candy to inmates and had physical contact with an inmate, as well as her inability to get along with corrections officers. (DOCCS Defs.' SMF ¶¶ 44-45, 54, 55.)

Following her termination, in September 2007, Demas filed a petition for bankruptcy in the United States Bankruptcy Court, Northern District of New York. (*Id.* ¶ 72; Dkt. No. 45, Attach. 4.) In that petition, Demas did not disclose any potential cause of action against DOCCS, Fischer, or Waite as a potential asset; she was ultimately discharged from bankruptcy, and the bankruptcy case was closed on January 4, 2008. (DOCCS Defs.' SMF ¶ 72; Waite SMF ¶ 7.) In May 2012, Demas sought to reopen her bankruptcy case, and, in an affidavit submitted with that petition, stated that not until the middle of January 2008, after her bankruptcy case had closed, did she "finally put the pieces together" and "realized . . . a link between . . . Waite's well-known disdain for and hostility to females with [her] termination." (DOCCS Defs.' SMF ¶ 73; Waite SMF ¶ 8; Dkt. No. 45, Attach. 7 ¶ 6.)

This action was commenced on September 8, 2011, (Compl., Dkt. No. 1), and an amended complaint was filed on December 14, 2011, (Am. Compl.). On December 26, 2012, pursuant to the parties' stipulation, the court ordered the substitution of Harris, as the trustee of Demas' bankruptcy estate, as the plaintiff in this action. (Dkt. No. 35.)

### III. Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

### IV. Discussion

#### A. Judicial Estoppel

Defendants first argue that, as a threshold matter, the current claims should be dismissed based on the doctrine of judicial estoppel, due to Demas' failure to disclose these potential causes of action in her bankruptcy petition. (Dkt. No. 45, Attach. 3 at 9-14; Dkt. No. 47, Attach. 33 at 3-8.) Harris argues that dismissal is not warranted because, following the court's substitution of Harris—the trustee of Demas' bankruptcy

6

estate—as the plaintiff in this case, the application of judicial estoppel became inappropriate. (Dkt. No. 55, Attach. 1 at 37-38.) The court agrees with Harris and declines to apply judicial estoppel as a basis for summary judgment.

Under the judicial estoppel doctrine, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks and citation omitted). This has been applied in order to dismiss cases in which a debtor failed to disclose his interest to his bankruptcy estate. *See, e.g.*, *Coffaro v. Crespo*, 721 F. Supp. 2d 141, 145-47 (E.D.N.Y. 2010)*; Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 59 (S.D.N.Y. 1999). The rationale for the doctrine in the bankruptcy context is to protect the integrity of the system; it would violate the integrity of the bankruptcy system to "permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding." *Rosenshein v. Kleban*, 918 F. Supp. 98, 104 (S.D.N.Y. 1996); *see In re Adelphia Recovery Trust*, 634 F.3d 678, 696 (2d Cir. 2011).

Here, the real party in interest became Demas' bankruptcy estate following the court-approved substitution. (Dkt. No. 35.) Demas is no longer prosecuting this case for her own benefit. Therefore, applying the doctrine of judicial estoppel to dismiss the case would effectively prevent the bankruptcy estate from recovering any money that might be payable. Although Demas may have taken an inconsistent position in her bankruptcy proceeding, it cannot be said that the bankruptcy estate—i.e., the party against whom the doctrine is now being asserted—took that position. To bar the estate's ability to recover on this ground would be inequitable. *See Kotbi v. Hilton Worldwide, Inc.*, No. 11 Civ. 3550, 2012 WL 914951, at *3-4 (S.D.N.Y. Mar. 19, 2012). In any event, this is of no moment, given that the claims at issue fail on the merits, as discussed below.

**B.     Hostile Work Environment**

Harris first claims that Demas was "subject[ed] . . . to a hostile work environment on account of her gender in violation of Title VII," and that "[DOCCS] and [Fischer] effectively condoned the hostile work environment [DOCCS] employees subjected [Demas] to." (Am. Compl. ¶¶ 185-187, 188-191.) Defendants assert that Demas has failed to establish a hostile work environment claim because she has not demonstrated that any of the

8

allegedly discriminatory conduct of which she complains was motivated by gender or gender discrimination. (Dkt. No. 47, Attach. 33 at 9-23.) The court agrees with defendants.

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where a discrimination claim is predicated on the existence of a hostile work environment, the plaintiff must demonstrate that the conduct in question: "(1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's protected characteristic." *Robinson v. Harvard Prot. Servs.*, 495 F. App'x 140, 141 (2d Cir. 2012) (internal quotation marks and citation omitted). In determining whether a hostile work environment claim has been established, "courts should examin[e] the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether

9

it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 693 (2d Cir. 2012) (internal quotation marks and citation omitted). However, conclusory allegations of discrimination are insufficient to defeat a motion for summary judgment. *See Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008); *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).

Here, Harris has not demonstrated that any of the alleged conduct was motivated by Demas' gender, and he is therefore unable to prove his hostile work environment claim. Accordingly, defendants are entitled to summary judgment. While Harris has alleged a litany of incidents which, he asserts, were "ultimately caused by . . . Waite's hostility to . . . Demas as a female," (*see, e.g.*, Am. Compl. ¶¶ 66, 72, 77, 93, 102, 109, 117, 124, 132, 138, 157, 171, 180), the record evidence does not corroborate such an allegation. Notably, Demas' own deposition testimony contradicts these allegations and does not establish that the alleged hostile work environment was in any way related to her gender. For example, numerous times throughout her deposition, Demas was directly asked

whether she thought any of these incidents were gender-related or motivated by any of her coworkers' dislike or discrimination towards women, and each time, Demas indicated that she did not believe that to be the case; instead, she continually reaffirmed that, in her view, these incidents occurred because of Waite's desire to control the library operations and/or because she had testified against Waite in a disciplinary hearing. (Dkt. No. 45, Attach. 9 at 40, 43, 50, 59, 62-63, 67, 70, 81, 85, 87, 88, 89, 95-96.)

Demas further indicated that throughout her employment, she "did not believe [the] harassment was a result of gender bias on the part of . . . Waite," and instead merely "believed he was engaging in hostile, aggressive, and boorish behavior no worker should be subjected to." (Dkt. No. 55, Attach. 2 ¶ 31.) Her complaints to her supervisors are equally unavailing. For example, in memoranda to Garcia, Demas simply conveyed her belief that her "behavior is now being scrutinized by security due to [her] testimony at . . . Waite's hearing," (Dkt. No. 55, Attach. 4), and communicated that both male and female corrections officers were "harassing [her] by tring to make it seem that [she is] not security minded," (Dkt. No. 45, Attach. 12 at 3).

When asked for any evidence that would support her theory that the conduct at issue occurred because of her gender, Demas simply stated, in conclusory fashion, "I think that if I had been a man he wouldn't have treated me the way he did," and "I believe that . . . [Waite] would've tried to work something out if I had been a man." (Dkt. No. 45, Attach. 9 at 231.) On their face, the incidents set forth by Harris do not implicate Demas' gender in any way, and Harris has simply not provided any evidence, beyond bare speculation after the fact, that would demonstrate that any of these instances occurred "because of [Demas'] . . . protected characteristic." *Robinson*, 495 F. App'x at 141 (internal quotation marks and citations omitted). Therefore, despite the allegations to the contrary, Demas' testimony and the other record evidence fails to establish that her coworkers' conduct was motivated by, or in any way related to, her gender, and defendants are therefore entitled to summary judgment on the hostile work environment claim.

**C.    Retaliation**

Harris also alleges that Demas engaged in "protected activity" as defined by Title VII when she complained to her supervisors "about the hostile work environment she was subjected to," and that defendants

"retaliated against [Demas] on account of her protected activity by terminating her . . . in violation of Title VII." (Am. Compl. ¶¶ 192-95.) Defendants assert that the retaliation claim must fail because Demas did not engage in protected activity—specifically, they assert that her complaints to supervisors concerned simple employment disputes and did not convey that she was complaining of gender discrimination or any gender-motivated conduct by others. (Dkt. No. 45, Attach. 3 at 14-18; Dkt. No. 47, Attach. 33 at 24-27.) Again, the court agrees with defendants.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [that employee] has opposed any practice made an unlawful employment practice . . . or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *McMenemy v. City of Rochester*, 241 F.3d 279, 282-83 (2d Cir. 2001). If the plaintiff sets out a

prima facie case, then the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory rationale for its actions.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Johnson v. Palma,* 931 F.2d 203, 207 (2d Cir. 1991).  If the defendant proffers a legitimate, non-retaliatory reason, the burden of production then shifts back to the plaintiff to introduce evidence that the defendant's reason was a pretext for retaliation.  *See McDonnell Douglas*, 411 U.S. at 804; *Johnson*, 931 F.3d at 207.

Defendants argue that Harris has not established a prima facie case of Title VII retaliation because Demas did not engage in any "protected activity."  (Dkt. No. 45, Attach. 3 at 14-18; Dkt. No. 47, Attach. 33 at 25-27.)  For a plaintiff's actions to constitute a protected activity, she must have had a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law."  *McMenemy*, 241 F.3d at 283 (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)).  However, complaints about "just any law" do not suffice; the plaintiff must "have had a good faith, reasonable belief that [she] was opposing an employment practice made unlawful by Title VII."  *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10,

14

14 (2d Cir. 2013) (internal quotation marks and citation omitted). "Mere complaints of unfair treatment by an individual are not protected speech under Title VII." *McNutt v. Nasca*, No. 1:10-CV-1301, 2013 WL 209469, at *16 (N.D.N.Y. Jan. 17, 2013) (internal quotation marks and citation omitted).

In other words, the speaker must make clear to the employer that she is complaining of unfair treatment due to her membership in a protected class and that she is not complaining merely of unfair treatment generally. *See Dinice-Allen v. Yale-New Haven Hosp.*, No. 3:06CV00675, 2008 WL 160206, at *4 (D. Conn. Jan. 10, 2008). "While [a] plaintiff may have believed that she was the victim of discrimination, an undisclosed belief of such treatment will not convert an ordinary employment complaint into a protected activity." *Aspilaire v. Wyeth Pharm., Inc.*, 612 F. Supp. 2d 289, 308-09 (S.D.N.Y. 2009); *see Woods v. N.M.C. Labs.,* No. 93-CV-2908, 1997 WL 1038873, at *2 (E.D.N.Y. July 14, 1997), *aff'd*, 162 F.3d 1149 (2d Cir. 1998). Similarly, "'[a]s to the second element [of the *prima facie* case], implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct

15

prohibited by Title VII.'" *Kelly*, 716 F.3d at 15 (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)).

Here, Harris devotes a significant portion of his argument demonstrating that throughout the course of Demas' employment, she made several complaints of workplace harassment by Waite and others to her superiors, such that her employer was on notice of the harassment that was occurring and the hostile environment that she was enduring. (Dkt. No. 55, Attach. 1 at 8-22.) However, as further discussed above, what Harris has failed to demonstrate is that any of this conduct was gender-motivated or constituted gender discrimination, and he has equally failed to establish that any of Demas' complaints to her superiors conveyed a belief that the conduct was gender-motivated. *See supra* Part IV.B. In fact, Demas admits that she herself did not interpret any of the incidents as gender-motivated until well after her termination. (Dkt. No. 45, Attach. 7 ¶ 6.) Demas stated that at the time she made her complaints she "believed [Waite] was engaging in hostile, aggressive, and boorish behavior no worker should be subjected to," but that she "did not believe [her] harassment was a result of gender bias on the part of . . . Waite." (Dkt. No. 55, Attach. 2 ¶ 31.) Further, when asked about her conversations with

16

superiors regarding the incidents in question, and whether she indicated to her superiors that she felt she was being harassed because of her gender, she testified, "I really don't believe I did," and that "[m]ostly I think it was because I was the librarian." (Dkt. No. 45, Attach. 9 at 107.) Lastly, even in response to defendants' summary judgment motions, Demas again asserted that the "trait" that served as the basis for discrimination against her was that she had testified against Waite in a prior disciplinary hearing, which itself was unrelated to any discrimination or Title VII-related conduct. (Dkt. No. 55, Attach. 1 at 17-18; Dkt. No. 55, Attach. 2 ¶ 32.)

There are no indications that, prior to her affidavit in January 2008, Demas felt that she was being discriminated against because of her gender, much less that she indicated to her employer that she was complaining of unfair treatment due to her membership in a protected class and not simply complaining of unfair treatment generally. *See Dinice-Allen*, 2008 WL 160206, at *4. Therefore, Harris has not demonstrated that Demas engaged in any protected activity, and consequently, the retaliation claim must fail.

D. **Human Rights Law Claim**

Given the court's conclusion above that defendants are entitled to

17

summary judgment on the underlying Title VII hostile work environment and retaliation claims, the Human Rights Law claim that Waite "aided and abetted [DOCCS] in subjecting [Demas] to a hostile work environment on account of her gender and in retaliation . . . for her protected activity," (Am. Compl. ¶ 196), must also fail.[5]  *See Seale v. Madison Cnty.*, 929 F. Supp. 2d 51, 69 (N.D.N.Y. 2013) ("[A] plaintiff [alleging an aiding and abetting claim under the Human Rights Law] must show that the defendant aided or abetted a primary violation of the [Human Rights Law] committed by another employee or the [employer] itself.") (internal quotation marks and citation omitted); *DeJohn v. Wal-Mart Stores East, LP*, No. 5:09-CV-01315, 2012 WL 3679204, at *16 (N.D.N.Y. Aug. 17, 2012).  Accordingly, Waite is entitled to summary judgment on Harris' Human Rights Law claim.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motions for summary judgment (Dkt.

---

[5]  Title VII claims and claims of employment discrimination under the Human Rights Law are governed by the same legal standards.  *See Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714-15 (2d Cir. 1996).  Thus, any underlying state law discrimination claim by Demas would fail on the same basis as her Title VII claims.

Nos. 45, 47) are **GRANTED**; and it is further

**ORDERED** that Harris' amended complaint (Dkt. No. 13) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

June 5, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court